## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MARQUIS JACKSON,

      Plaintiff,

v.

CITY OF NEW HAVEN; and LEROY
DEASE, PETISIA ADGER, DARYLE
BRELAND, and JAMES
STEPHENSON, in their individual
capacities.

      Defendants.

**Case No. 3:19-cv-00388-JAM**

APRIL 1, 2020

## PLAINTIFF'S CORRECTED (TYPO ONLY) REPLY TO DEFENDANTS' OPPOSITIONS (ECF 71 & 72) TO HIS MOTION FOR LEAVE TO AMEND COMPLAINT (ECF 68)

The opposition briefs filed on behalf of the respective Defendants focus in significant part on the purported "futility" of the continuing-course-of-conduct negligence action comprising the Eleventh Count of the proffered amended complaint, and the derivative counts (XII and XIII) with respect thereto. In particular, Defendants claim that said causes of action, involving the continuing failure on the part of Defendants Adger and Dease to disclose exculpatory information in their possession (137 pages of phone records in all, including numerous pages of investigative margin notes and several charts prepared by these very detectives) are barred by the applicable State statute of limitations. *See* Def. Dease & Adger Br., (ECF 72), pp. 1-5; Def. City of New Haven Br., pp. 8-14.

## ORAL ARGUMENT REQUESTED (Zoom capable)

1

It should be noted at the outset, that in advancing their futility objections, it is the

Defendants who bear the burden of proof, and that the standard is a strict one. A party seeking to

preclude an opposing litigant from even presenting a claim, on the grounds of futility, is

required to show that there is no scenario under which the proffered allegations could withstand

a motion to *dismiss* – i.e., that on the face of the plausibly pled allegations, and the allegations

*alone*, including all reasonable inferences favoring the amending party, there is no tenable cause

of action at all. *See, e.g*., *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88

(2d Cir. 2002); *Schaghticoke Tribal Nations v. Norton*, 2007 WL 867987, at * 11 (D. Conn.

March 19, 2007).  In making that determination, a court "[does] not consider the merits of a

claim or defense", but only whether the amendment "is clearly frivolous or legally insufficient

on its face." *Knapp v. America Cruise Lines, Inc*., 2018 WL 5263275, at *3 (D. Conn. Oct. 23,

2018).

As set forth below, Defendants have not, and cannot, satisfy their burden of showing that

the negligence causes of action in the proffered amendment are barred by the statute of

limitations at all, let alone so patently and incontestably untenable (i.e., "clearly . . . futile"

regardless of the evidence provable thereunder) as to preclude plaintiff from even offering them

*ab initio*. To the contrary, the allegations comprising the counts in question provide a plausibly

pled basis for Plaintiff to satisfy the statute of limitations requirements of Connecticut law in two

separate and independent respects.

First, as the allegations clearly state, in language more than adequate under the "short and

plain statement" requirements of F.R.C.P. Rule 8(a)(2), Defendants Adger and Dease (*see* Pltf's

2

Jan. 31, 2020 Motion & MOL, Ex. A (ECF 68-1), Proposed Amended Cmplt, ¶¶ 154-155, 250, 252-255), and the City of New Haven (*id*., ¶¶ 265-66), engaged in a continuing course of conduct that tolled the statute of limitations through 2018, well within the time period for commencing legal action. *See* § I, *infra*. Second, in addition to the tolling consequences of the continuing course of conduct allegations, there is a separate and independent reason that Defendants' cannot satisfy their burden of demonstrating futility on the asserted statute of limitations grounds they advance. As again set forth below, under Connecticut law, where, as here, a plaintiff's negligence action arises from an underlying criminal conviction, it is an essential element of such action that the criminal conviction have first been set aside, such that the cause of action does not accrue, and the statute of limitations does not begin to run, until the occurrence of that event, which in this case was in 2018, *id*., ¶ 180 – again well within the limitations period. *See* § II, *infra*.

　　As further set forth below, Defendants' remaining grounds for precluding the proposed amendments are likewise unfounded. *See* §§ III, IV & V, *infra*.

**I.　The Continuing Negligence Claims in Proposed Counts XI & XIII, and the Indemnification Claim in Count XII, are Not Barred by the Statute of Limitations**

　　It is a well-established principle of Connecticut law that, notwithstanding the provisions of Conn. Gen. Stat. § 52-584, which measures the statute of limitations for claims based on negligence from the date when the negligent conduct occurred, "[that] statute of limitations or repose may be tolled under the continuing course of conduct doctrine." *Witt v. St. Vincent's Medical Center*, 252 Conn. 363, 369 (2000), *citing & quoting in part, Sherwood v. Danbury Hospital*, 252 Conn. 193, 202-203 (2000). The application of the continuing course of conduct

doctrine – a "conspicuously fact-bound inquiry" turning on the "circumstances of the case," 252 Conn. at 210 – requires the determination of whether the defendant: "(1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." *Witt v. St. Vincent's*, 252 Conn. at 370. Those factual determinations, in many cases involving the testimony of expert witnesses, *see, e.g.*, *Bednarz v. Eye Physicians of Central Connecticut, P.C.*, 287 Conn. 158, are rarely, if ever, decided at the motion to dismiss or pleadings stage.

It is further well-established that the element of continuing wrongful conduct may be satisfied through acts of omission, and not limited to proof of affirmative misconduct. *Witt v. St. Vincent's*, 252 Conn. at 371; *Sherwood v. Danbury Hospital*, 252 Conn. at 204-05. In that setting, where, as here, the continuing duty at issue is the duty to warn or disclose, the Connecticut courts have drawn an outcome-determinative distinction between those cases where defendants withheld information of which they were "actually aware," supporting the tolling of the statute of limitations under the continuing course of conduct doctrine, from those in which such knowledge was absent. *See, Essex Insurance Co. v. William Kramer & Assoc., LLC, 331 Conn. 493, 514-18 (2019); Martinelli v. Fusi, 290 Conn. 347, 363 (2009); Bednarz v. Eye Physicians of Central Conn., P.C.*, 287 Conn. 158 , 167-68 (2008)[1]; *Witt v. St. Vincent's*, 252 Conn. at 375; *Partitions, Inc. v. Blumberg Associates, Inc.*, 2001 WL 1332174, at * 3 (Super. Ct. Oct. 9, 2001).

As encompassed in the proffered amended allegations, and as the evidence will show,

---

[1] In *Bednarz*, it may be noted, the Connecticut Supreme Court reversed the trial court's entry of summary judgment for the physician defendant that had been premised on statute of limitations grounds, and remanded the case for trial, finding genuine issues of material fact with respect to the element of "actual knowledge" with respect to tolling under the continuing course of conduct doctrine, in a duty to warn case, notwithstanding the retirement of the defendant physician prior to the tolled limitations period. 287 Conn. at 166-67.

there is ample basis for a fact-finder to conclude that Defendants Adger and Dease had "actual knowledge" of the exculpatory contents of the phone records evidence at issue, from the time they obtained it during their investigation of the Dixwell Deli murder in early1999, until and including the date of its ultimate disclosure in 2018. Accordingly, under the applicable Connecticut case law, their negligent failure to communicate that exculpatory information as they should have at the time – set forth in the amended allegations (stemming from, and supported by, the recent deposition testimony of Defendant Adger) – and compounded by their continuing failure to do so for over 19 years thereafter, fully satisfies the prerequisites for tolling under the continuing course of conduct doctrine and long line of Connecticut case law cited above, and refutes any limitations-based "futility" claims at this juncture. The fact that Defendants fail to even address this well-established and expressly-pled Connecticut tolling doctrine (the Adger-Dease defendants give it scant attention, citing to a handful of New York cases that have no bearing on the issue whatsoever, Def. Adger-Dease Br., pp. 3-5; and the Defendant City does not so much as mention the doctrine at all, notwithstanding the express and repeated reference to the continuing-course nature of 19-year pattern of negligent misconduct at issue, *see & compare*, City's Br., pp. 8-14, *with* Amended Cmplt, ¶¶ 154-55, 170, 252, 253(a), 253(b), 253(c), 253(d), 253(e), 254, 260, 262, and 265-66) – is in itself telling, especially given the strict and heavy burden Defendants bear in seeking to preclude amendment based on purported futility grounds in the first place.

      If anything, the allegations of the proffered amendments, and the evidentiary record that supports them, present as clear-cut an instance of "actual knowledge" as any could be:

> ➢ the continuing and uninterrupted physical possession of the non-disclosed evidence for over 19 years, in Detective Adger's basement, following their transfer to her by Detective

Dease – records that defendant Adger later expressly acknowledged she retained because she "kept getting called to court" in the years following her arrest of Plaintiff and his subsequent conviction and incarceration – proceedings that were ongoing at the time the records were finally uncovered in 2018, *see* **Ex. A**, separately attached;

➢ the direct involvement and sign-off by both individually named defendants in the preparation and securing of the search warrants utilized to seize a substantial portion of the non-disclosed records at issue, *see* **Ex. B**, separately attached;

➢ extensive notations on numerous pages of the records in the handwriting of Defendant Adger herself, *see* **Ex. C**, separately attached;

➢ the preparation and possession by these Defendants of two detailed charts summarizing the contents of key portions of the non-disclosed information in question, *see* **Ex. D**, separately attached;

➢ the further information contained within those records that likewise pointed to the Bridgeport connection between every one of the five calls placed by the stolen cell phone in the aftermath of the murder, Steve Brown (an admitted participant in the murder, after his fingerprints were found at the scene), and Brown's Bridgeport drug-dealing associates, not Plaintiff, Vernon Horn, or anyone associated with either of them, *see* Ex. E, separately attached.

Unlike those cases in which the Connecticut courts have rejected a continuing duty – on a developed record at summary judgment, and never *ab initio* at the pleadings stage, it should be noted, *see, e.g., Martinelli v. Fusi, supra* -- in the present case actual knowledge on the part of these Defendants is not only a non-frivolous, reasonably permissible inference that Defendants' opposition papers do nothing address, let alone "clearly" refute; to the contrary, these Defendants' continuing possession and "actual knowledge" of the contents of the non-disclosed exculpatory evidence is virtually beyond dispute.

Under these case-specific circumstances, tailor-made for the omission-based duty to disclose that *Sherwood v. Danbury Hospital* and *Witt v. St. Vincent's*, and their progeny, call for, there is ample reason to believe Plaintiff's negligence-based continuing course of conduct claims will find significant evidentiary support, and no basis in futility to bar Plaintiff from even being

afforded the opportunity to pursue them.[2] While Defendants apparently believe they have some prospect of defeating those claims on the merits, including the issue of non-disclosure in the first place, in reliance on evidence *already* developed in pretrial discovery to date, *see* Def. City's Br., p. 4, that is a matter to be addressed at summary judgment or trial, not preemptively excluded on grounds of purported futility. *See Halloran v. Harleysville Pref. Insur. Co.*, 2018 WL 780214, at *7 (D. Conn. Feb. 8, 2018)(limitations defense is "a fact-laden determination that is more properly suited for summary judgment or trial," *citing Belz v. Peerless Insur. Co.*, 204 F.Supp. 3d 457, 465 n.2 (D. Conn. 2016)). *Accord*: *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 268 F.R.D. 160, 166 (E.D.N.Y. 2010) (granting leave to amend, noting the determination of statute of limitation defense "requires a consideration of the merit of both parties' claims and defenses . . . [and] is better addressed on a motion for summary judgment or at the time of trial").

## II. Defendants' Futility Claims Are Additionally Unavailing Because, Under Connecticut Law, a Negligence Action Arising from an Underlying Criminal Conviction Does Not Accrue Until the Conviction has First Been Set Aside

In addition to largely ignoring the continuing course of conduct doctrine with respect to their statute of limitations claims, Defendants completely ignore Connecticut's adherence to the rule that a tort action related to an underlying criminal conviction cannot be maintained, and does not accrue, until the criminal conviction has first been set aside. That principle was

---

[2] Although the present procedural posture is not the appropriate juncture to resolve the issue, it may be noted that Connecticut's jurisprudence of continuing-course tolling in cases premised on non-disclosure provides a logical and well-defined criterion for limiting the duration of such duty. As indicated in *Essex Insurance Co. v. Kramer, supra*, the duty of disclosure "will continue only as long as there remains an opportunity to cure, or at least mitigate, the injury from the initial breach that gave rise to the cause of action." 331 Conn. at 515, *citing Targonski v. Clebowicz*, 12 Conn. App. 97, 110 (2013). In the context of the present case, that termination point would be the time as of which there are no longer legal proceedings in which the disclosure could be utilized – a rule and termination point consistent with that followed in other jurisdictions. See *Whitlock v. Brueggemann*, 682 F.3d 567, 587–88 (7th Cir. 2012) (holding there to be a duty to disclose withheld exculpatory evidence "throughout the proceedings, including…post-conviction procedures, when that…evidence was known to the state at the time of the original trial" (quotation marks omitted)).

expressly adopted by the Connecticut Appellate Court in *Taylor v. Wallace*, 184 Conn. 43 (2018), and has since been followed in every Superior Court case in which the issue has arisen. *Taylor* involved a legal malpractice action related to a previous criminal case in which the plaintiff had been convicted and was serving a 25 year sentence for murder. In upholding the lower court's dismissal of the action, the Appellate Court held as a matter of Connecticut law that the tort action could not be maintained until the underlying criminal conviction had first been invalidated. *Id*. at 51-52. In doing so it adopted the policy enunciated in *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id*. In addition, it quoted with approval from an earlier Superior Court case to the same effect, *Tierinni v. Coffin*, 2015 WL 3798179 (Conn. Super. May 21, 2015): "[b]ecause an invalidation of the underlying criminal matter through the plaintiff's pending [habeas] petition is a necessary precursor to this legal malpractice claim ... the plaintiff's legal malpractice claim has not yet accrued." *Taylor v. Wallace*, 154 Conn. App. at 53, quoiting *Tierinni v. Coffin*, 2015 WL 3798179, at *5. *Tierinni*, decided by Judge William Bright, who now himself sits on the Appellate Court, in addition to the accrual language quoted in *Taylor*, expressly addressed the plaintiff's argument in that case that such an accrual rule would prejudice his ability to ever bring such a malpractice claim:

> The court is not persuaded. Legal malpractice claims are subject to the three year statute of limitations under General Statutes § 52–577. A "cause of action does not accrue for the purposes of a statute of limitations until all elements are present ..." *Rosenfield v. I David Marder & Associates, LLC*, 110 Conn.App. 679, 686, 956 A.2d 581 (2008). . . . . Because an invalidation of the underlying criminal matter through the plaintiff's pending petition is a necessary precursor to his legal malpractice claim in the present case, the plaintiff's legal malpractice claim has not yet accrued and the statute of limitations has not yet begun to run.

2015 WL 3798179, at *5.[3]

In short, separate and apart from the tolling principles applicable to the allegations at issue in the proffered amendment, those tort actions would not have been tenable before the current period under the rule of *Taylor v. Wallace*, and Defendants'' futility arguments fail for that reason as well.

### III. Pursuant to F.R.C.P. Rule 8(d)(3), Plaintiff is not Precluded from Pleading Alternative Theories of Liability, and the City's suggestion to the Contrary is Unsupported, Inconsistent with Long-Established Principles of Pleading and Proof, and in Disregard of the Express Language of the Very Allegations it Seeks to Attack

It is difficult to understand on what good faith basis the Defendant City maintains that the allegations of proffered Count XI must be read to allege intentional and wanton misconduct, and not negligent as its allegations repeatedly read, with detailed specification of the multiple respects in which Plaintiff claims that Defendants Adger and Dease – whose counsel does not even join in this preposterous aspect of the City's brief, it should be noted. This curious argument is apparently the product of the recent spectacle of Connecticut municipalities seeking to renege on their indemnification protection for municipal police officers in the performance of their duties. *See City of Hartford v. Edwards*, 946 F.3d 631 (2d Cir. 2020). Regardless of what the record in *Edwards – after trial –* may have supported or excluded with respect to negligence,

---

[3] The foregoing tracks the analysis of the Connecticut Appellate Court in an earlier decision pertaining to the impact of the requisite elements of a cause of action on when that cause of action will be deemed to accrue, and when, accordingly, the statute of limitations commences:

> The true test for determining the appropriate date when a statute of limitations begins to run is to establish the time when the plaintiff first successfully could have maintained an action. That is, an action cannot be maintained until a right of action is complete and hence, the statute of limitations cannot run before that time…. A cause of action does not accrue for the purposes of a statute of limitations until all elements are present,

*Burke v. Klevan*, 130 Conn. App. 376, 381 (2011).

there is nothing in the Rules, the case law, or the contents of the proffered allegations under Count XI that supports the City's preposterous attempt to read itself out of liability for the conduct set forth in that Count if proven.

Indeed, as stated in Plaintiff's original brief, one precipitating reason for the proffered allegations in question was Detective Adger's recent deposition testimony in this case, to the effect that, notwithstanding her extensive notations on multiple pages of the phone record evidence, and the connections they established among Steve Brown, his Bridgeport associates and the West Haven land line that figures so prominently in her police reports and arrest warrant for Plaintiff, and in the State's case at trial, she failed to see any significance or evidentiary value whatsoever in those phone records. January 31, 2020 Motion for Leave to Amend (ECF 68), p. 3, & Ex. D thereto (ECF 68-4), pp. 128-31, 162-63. If believed, that evidence would establish negligence, not the willful and wanton misconduct that the City (but not counsel for Detectives Adger or Dease) so conveniently now seeks to ascribe as the exclusive adverse interpretation of these detectives' conduct.

The City's rationale for this proposition, and the supposedly mandatory reading of the allegations to preclude negligence even though that is what the allegations expressly state in detailed particularity, *see* Proposed Amended Cmplt, ¶¶ 253(a)-253(g), is the use of a single verb in one of the precedent factual allegations incorporated by reference into Count XI, referring to the non-disclosed records as having been '"hid" in Detective Adger's basement, Def. City Br., p.

14, accompanied by even more preposterous, selective and inaccurate, readings of the contents of

the proffered, and relatively straightforward allegations..[4]

As set forth in fn. 4, *supra*, it is respectfully submitted that the Court should decline the

City's invitation to engage in that selective and inaccurate exercise in linguistics. Moreover, the

City's approach not only flies in the face of the express allegations at issue themselves, but is

equally oblivious to the express language of the federal rules, authorizing multiple or alternative

statements of a claim in a single count or separate ones, F.R.C.P. Rule 8(d)(2), and as many

separate claims or defenses as a party may have, regardless of consistency. F.R.C.P. Rule

8(d)(3). For more than a quarter century, the rule in this Circuit, as elsewhere, has supported

flexibility in the allowance and interpretation of pleadings, consistent with the disfavor of

precluding consideration of the merits, and the principle that in proceedings aimed at precluding

such consideration, all reasonable inferences are to be drawn in favor of the nonmoving party –

principles and flexibility that are "specially appropriate in civil rights cases, in which complex

inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims."

*Henry v. Daytop Village, Inc*., 42 F.3d 89, 94-95 (2d Cir.1994). *See also, Bussolari v. City of*

*Hartford*, 2016 WL 4272419, at *2-3 (D. Conn. Aug. 12, 2016)(rejecting defendant detectives'

claim that civil rights plaintiff was precluded from including negligence clam in false arrest

---

[4] The City also asserts that the incorporated allegations include the statement that Dease and Adger "fully"
understood the significance of the non-disclosed information. Def. City Br., p. 14. The paragraph to which it refers
states that the detectives had 'knowledge" that the records pointed to the Bridgeport associates of Brown, which they
clearly did, but does not include the term "fully" in describing the scope of their knowledge. That adverb was
inserted by the City, perhaps because it somehow believes that adverb will eviscerate the express allegations of
Count XI themselves. *See & compare* Def,. Br., p.14, *with* Amended Cmplt, ¶ 165. Elsewhere in the same
incorporated section of the factual allegations on which the City seeks to place such weight, but conveniently
omitted from its discussion, these same incorporated allegations state that the detectives "mysteriously failed" to
record or disclose the records, Amended Cmplt, ¶ 170, and include allegations with respect to the retrieval and
contents of the non-disclosed records "on information and belief" *Id*., ¶¶ 155-57. It is respectfully submitted that the
City's selective exercise in linguistics, is absurd and unworthy in any setting, most of all in the guise of satisfying
the strictly construed "futility" preclusion for which it offers no supporting authority whatsoever.

case). Not surprisingly, the City does not cite a single case that supports it curious reading of

Count XI, and this Court should reject the City's novel and unfounded analysis in its entirety.

### IV. Plaintiff's Direct Liability Claim Against the City under Count Proffered Count XIII is not Barred by Governmental Immunity

As noted by the district court in *Bussolari*, *supra*, notwithstanding the doctrine of

governmental immunity for discretionary acts of municipal employees, "Connecticut has long

recognized 'the identifiable person-imminent harm exception" to discretionary act immunity.

*Bussolari*, 2016 WL 4272410, at *4. *See also*, *Haynes v. Middletown*, 314 Conn. 303 (2014)

(establishing elements of the test). That exception applies to both negligence claims brought

against individual municipal employees, as to whom the municipality may have an

indemnification obligation under C.G.S. § 7-465, and to a direct action for negligence against

the municipality itself under C.G.S. § 52-557n. *See Grady v. Town of Somers*, 294 Conn. 324

(2009).

The allegations of proffered Count XIII contain detailed specifications against the City

under the latter statute, first incorporating the negligence allegations with respect to the

individual defendants' negligence as discussed above, and then adding detailed specifications of

closely related continuing negligence as to the City itself. *See* Amended Cmplt., ¶¶ 264-67. In

addition, that Count further alleges that "[i]t was and should have been apparent [to the City]

that its negligent misconduct . . . was likely to subject Plaintiff, a specifically identifiable victim

of its misconduct, to severe and imminent harm." Id., ¶ 268. In short, the allegations of Count

XIII, under C.G.S. § 52-557n, fall squarely within the specifically identified person/imminent

harm exception to municipal discretionary act immunity.

The City's opposition brief does not dispute this fact. It simply ignores it, and ignores

the long line of cases affirming the IIP/imminent harm basis for municipal discretionary act liability under State law. Simply put, the two-page discussion of governmental immunity and ministerial acts at the conclusion of the city's opposition brief is completely beside the point. The City has not come close to meeting its strict burden to obtain futility preclusion of Count XIII, least of all the irrelevant boilerplate in its cursory treatment of matters having nothing to do with the detailed allegations set forth in that count.

## V.  Plaintiff Should be Granted Leave to Amend His Complaint in the Limited Respects Requested

The remaining basis for defendants' position that the Court should deny permission for Plaintiff to add the negligence counts set forth in the proposed amendments rests on claimed prejudice that is not consistent with limited nature of the allegations in question, their close relationship to claims already in the case, and the current status of the pretrial record.

The added negligence allegations fall into two categories, addressed to two separate sets of defendants, encompassed in proposed Count XI (Defendants Dease and Adger) and Count XIII (the City of New Haven). For purposes of the present analysis, they should be treated separately, in that the calculus of purported prejudice, if any, that may be associated with allowing Plaintiff his otherwise "freely" favored "opportunity to [pursue] his claims on the merits," *Forman v. Davis*, 371 U.S. 178 (1962), will be decidedly different in each instance.

First, as to Detectives Dease and Adger, involved in proffered Count XI, relating to their alleged failure to disclose the exculpatory phone records, seized and analyzed by them at the time of the murder investigation and arrest of Plaintiff in 1999, but alleged not to have been disclosed despite the contemporaneous knowledge of Dease and Adger as to their contents, it should be noted that there is ***no prejudice analysis whatsoever*** presented by any of the

defendants in either of their filed objections with respect to the requested addition of this Count. That omission is hardly surprising – the allegation of Count XI involve the same nucleus of operative facts that have been the subject of discovery to date -- circumstances surrounding the investigation of the Dixwell Deli murder, including the procurement of the subject phone records by Detectives Dease and Adger, and the lack of disclosure or communication with respect to them, either at the time of pretrial and trial proceedings in Plaintiff's criminal case, or at any time thereafter until their recovery in early 2018. In fact, the defendants themselves have conducted a significant discovery concerning this subject from third parties, and regardless of whether the current amendments are allowed, have indicated they will be deposing Mark Caporale (a former NHPD officer and now federal defender investigator who was the person that recovered the phone records from Defendant Ager's homer in 2018). Indeed, counsel for these Defendants indicate at the conclusion of their objection (ECF 72) that count XI is, in their view, unnecessarily duplicative of the 7th Count that has been part of the case from the outset. Dease Adger Br., p. 5. Other than the remaining discovery that will already be going forward in the next month or so, there is no further discovery – and no identifiable prejudice whatsoever – that would result from allowing the requested addition of Count XI (and associated indemnification Count XII), and none of the Defendants have demonstrated otherwise, as they clearly cannot.

Under the foregoing circumstances, it is respectfully requested that the Court should grant Plaintiff's motion to add Counts XI and XII. They involve the same parties who are already in the case. They stem from the same body of operative facts, and they will require no additional discovery. At the same time, the allegations of these counts provides a separately

14

identified cause of action with respect to continuing failure to disclose that will entail its own

set of legal and factual issues, stemming from the December deposition testimony of detective

Adger (it should also be noted that the remaining defendant as to these counts, Detective Desae

is and apparently has long been permanently disabled from testifying on any subject, including

this one, per the stipulation previously filed with the Court, and unaffected by whether or not

leave is granted herein).

     As further noted above, notwithstanding Defendants' claims to the contrary, these

amended allegations are neither futile nor advanced in bad faith (there has been no such claim

by Defendants in the latter regard), and were occasioned by testimony elicited only weeks

before the filing of the motion, and in a present posture in which the Scheduling Order, by

agreement of the parties, was recently amended to extend the discovery and dispositive motion

deadlines by several months. The case has not been set down for trial, and is unlikely to be

reached for trial before the end of this year, given a likely completion of briefing on summary

judgment into the fall.

     With respect to Count XIII, unlike Counts XI and XII, the City has advanced claims of

prejudice, including the claim that the addition of that count, involving allegations of

negligence on the part of NHPD policy-makers that extend beyond the time period addressed in

the original case, and purportedly involving the need for the City to conduct additional

discovery. It should be noted, however, that the information in question would be information

within the control of the City itself. Moreover, contrary to the suggestion that time does not

allow for such additional discovery as may appear necessary to be completed under the current

scheduling order, it should be noted, as indicated above, that several remaining fact depositions

remains to be taken later this spring, that the expert disclosure deadline has been deferred, as to Defendants until mid-June, and that the trial has yet to be scheduled and is likely at least eight to ten months off.

At the same time, in balancing the liberal policies in favor of amendment under Rule 15, and the scheduling commands of Rule 16, there are several factors that weigh in favor of allowing Plaintiff to add Count XIII, in addition to the other counts. First, contrary to the City's suggestion that delay has been inordinate, the overall time frame with respect to this amendment – the first amendment requested by Plaintiff herein, *see Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119 (2d Cir. 1991) (it is "rare' that leave to amend should be denied, "especially when there has been no prior amendment") – has come prior to the completion of discovery, under an order that has now been further continued subsequent to the requested amendment in any event, and in a setting that compares favorably to numerous other cases in which leave to amend has been granted. *See A.V.E.L.A., Inc. v. Estate of Monroe*, 34 F.Supp.3d 311, 317-18 (S.D.N.Y.)(listing cases). Moreover, as noted in Plaintiff's initial brief, this case is one of utmost importance to Plaintiff, involving the loss of 19 critical years of his adult life, with accompanying civil rights and common law claims in which, as the Second Circuit noted in *Henry v. Daytop Village, supra*, flexibility with respect to pleading can be "especially appropriate." 42 F.3d at 95. Finally, for the reasons described in Plaintiff's initial brief, including the unanticipated testimony by Detective Adger that, contrary to the indications in the available record prior to that deposition, the non-disclosure of the phone record evidence, and the omission of any reference to that evidence in any police report or other known component of the investigative file, was the result of bona fide belief that, in the end, the

16

records had no "connection" or "involvement" or "anything to do" with the Dixwell Deli

murder and the arrest and prosecution of Plaintiff and Vernon Horn therefor. See ECF 68-4, pp.

130-31. That unanticipated claim, coupled with the continuing possession and non-disclosure

of those records for 19 years, established a basis for the negligence claims, separate and apart

from the existing civil rights claims, and arguably from the generic negligence claims in Count

VII, that provide good cause for the amendments now at issue.

**Conclusion**

For all of the foregoing reasons, it is respectfully requested that the Court grant, in whole

or in part, Plaintiff Marquis Jackson's motion for leave to amend his complaint (ECF No. 68) to

add Counts XI – XIII, in accordance with the proposed amended compliant submitted herewith.


THE PLAINTIFF: MARQUIS JACKSON

By:        /s/ *Kenneth Rosenthal*
           Kenneth Rosenthal (ct05944)
           Law Office of Kenneth Rosenthal
           700 State Street
           New Haven, CT 06511
           (203) 915-4235
           krosenthal@gs-lawfirm.com

           Daniel F. Lage (ct30196)
           Christie D. Jean (ct29787)

           Ruane Attorneys at Law
           1 Enterprise Drive, Suite 305
           Shelton, CT 06484
           daniel@ruaneattorneys.com

           *Attorneys for Plaintiff*

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 2, 2020 (approx.. 12:40 a.m.), a copy of the foregoing was filed electronically. The corrected (typo only) copy was electronically filed ad emailed to all counsel on April 15, 2020. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/*Kenneth Rosenthal*
Kenneth Rosenthal (ct05944)

18