UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - - x
                                :
MARQUIS JACKSON,                :  No. 3:19CV388(RNC)
                                :
              Plaintiff,        :
                                :
         vs                     :
                                :
CITY OF NEW HAVE, ET AL.        :
                                :  HARTFORD, CONNECTICUT
              Defendants.       :  APRIL 23, 2020
                                :
- - - - - - - - - - - - - - - - x
```

TELEPHONE CONFERENCE ON PENDING MOTION

BEFORE:

HON. ROBERT N. CHATIGNY, U.S.D.J.

Darlene A. Warner, RDR-CRR
Official Court Reporter

 1    APPEARANCES:

 2

 3        FOR THE PLAINTIFF:

 4            LAW OFFICE OF KENNETH ROSENTHAL
                 One Audobon Street, Third Floor
 5               New Haven, Connecticut 06511
             BY:  KENNETH ROSENTHAL, ESQ.

 6
             RUANE ATTORNEYS
 7               1 Enterprise Drive; Suite 305
                 Shelton, Connecticut 06484
 8           BY:  CHRISTIE DORINE JEAN, ESQ.
                 DANIEL FERNANDES LAGE, ESQ.

 9

10        FOR THE DEFENDANTS:

11           HOWD & LUDORF
                 65 Wethersfield Avenue
12               Hartford, Connecticut 06114-1190
             BY:  THOMAS R. GERARDE, ESQ.

13
             SUSMAN, DUFFY & SEGALOFF
14               59 Elm Street; Floor 5
                 New Haven, Connecticut 06507
15           BY:  THOMAS E. KATON, ESQ.

16           NIELSEN ZEHE ANTAS
                 55 West Monroe Street, Suite 1800
17               Chicago, Illinois 60603
             BY:  BRADFORD SCOTT KRAUSE, ESQ.
18               JEFFREY R. ZEHE, ESQ.

19           OFFICE OF THE ATTORNEY GENERAL
                 110 Sherman Street
20               Hartford, Connecticut 06105
             BY:  EDWARD DAVID ROWLEY, AAG

21

22

23

24

25

```
 1                              10:00 A.M.

 2

 3              THE COURT:  Good morning, the Judge is on the

 4    line.

 5              I understand that there are 12 people on the

 6    line, so why don't we start with roll call.  I think it's

 7    easiest to take the appearances of plaintiff's counsel

 8    first.

 9              MR. ROSENTHAL:  Good morning, Your Honor, this

10    is Ken Rosenthal, and I represent the plaintiff, Marquis

11    Jackson whose motion this is.

12              MR. LAGE:  Good morning, Your Honor, Dan Lage,

13    in addition to Mr. Rosenthal for Marquis Jackson.

14              MR. MAAZEL:  Good morning, Your Honor, Ilaan

15    Maazel, I'm representing Vernon Horn, in the companion

16    case of Horn v. New Haven, et al.  I will primarily just

17    be listening today.

18              MS. JEAN:  Good morning, Your Honor, Christie

19    Dorine Jean on the line, also on behalf of Mr. Jackson,

20    listening in.

21              THE COURT:  Okay.  That's four people, Darlene

22    makes five, and let's see, Luke would be six, I'm seven.

23    So I guess there are five more people on the phone, is

24    that right?

25              MR. GERARD:  Your Honor, Tom Gerarde.  I
```

1    represent the City of New Haven.

2              MR. KATON:  Good morning, Thomas Katon

3    representing the individual defendants Dease, Adger and

4    Breland.

5              MR. ZEHE:  And, good morning, Your Honor, this

6    is Jeff Zehe, Z-E-H-E, on behalf of the individual

7    detectives.

8              MR. KRAUSE:  And Brad Krause, K-R-A-U-S-E, also

9    on behalf of the individual defendants.

10             MR. ROWLEY:  Good morning, Your Honor, Ed Rowley

11   on behalf of defendant Stephenson.

12             THE COURT:  Okay, thank you all.  I think that's

13   everybody.  Did we miss anyone?

14                  (Pause)

15             THE COURT:  No, all right.

16             This is a telephone conference to address the

17   motion to amend filed on behalf of Mr. Jackson.

18             Mr. Rosenthal, will you be speaking on behalf of

19   Mr. Jackson today?

20             MR. ROSENTHAL:  Yes I will, Your Honor.

21             THE COURT:  And on the defense side, who will

22   speak for the city?  Mr. Gerard?

23             MR. GERARD:  Yes, I will, Your Honor.

24             THE COURT:  And for the individuals?

25             MR. KATON:  Thomas Katon, Your Honor.

1          THE COURT:  Very good, thank you.

2          Mr. Rosenthal, it's your motion.  I've read all

3     the papers, including the exhibits, so I understand the

4     points that have been made in the papers, I think, but

5     you're welcome to make whatever additional points you wish

6     this morning, and then we'll hear from defense counsel.

7          MR. ROSENTHAL:  Okay, Your Honor, I thank you.

8     I'll be brief because I know Your Honor has read the

9     papers.

10          Mr. Jackson was -- claim is he was wrongfully

11     incarcerated, wrongfully convicted, imprisoned for 19

12     years.  His conviction was vacated in May of 2018.  Within

13     ten months of that date, we brought this action in March

14     of 2019, and this motion to amend following some discovery

15     was brought in January of 2020, a couple months ago,

16     another ten months after we had brought the complaint.

17     This is the first and only motion to amend that we

18     brought.

19          It seeks to add a negligence -- an additional

20     negligence count that's focused specifically on a

21     continuing course of conduct which relates to the

22     possession of phone records.

23          We attached to our original motion the testimony

24     of Detective Adger concerning those phone records and her

25     claim that she just didn't see their relevance, and that's

1    the reason she didn't document them in the police reports.

2    And they were, as the papers indicated, never known about

3    by defense counsel, by the prosecutor, by a Court or the

4    jury, and here we are.

5            So, we filed this motion.  We believe that we

6    should be entitled to have this -- these additional counts

7    included.

8            As we indicated in our moving papers and as the

9    defendants have indicated, on the issue of prejudice,

10   undue prejudice, as the cases indicate, there isn't even

11   an argument that has been advanced about any prejudice to

12   the individual defendants.

13           The City, with respect to the count against

14   them, specifically Count -- proposed Count Thirteen, has

15   made prejudice arguments.  So we believe this needs to be

16   analyzed in two separate parts.

17           And backing up from that, there is a

18   considerable amount of discussion of alleged futility

19   based on statute of limitations and other arguments.

20           As the Court is aware and as we indicated in our

21   briefs, this is not the time to decide definitively

22   whether there's a statute of limitations issue.  We don't

23   believe there is based on the case law we've cited.

24           But, of course, the question here is whether we

25   should be allowed to even litigate that issue; that is,

1    whether on its face, it's so frivolous that the -- we

2    should be stopped initially from raising this claim.

3            I'll just say one more thing that I think is

4    addressed in the papers, but is an ongoing process here;

5    and that is that unlike the cases where motions to amend

6    where courts exercise their discretion to bar motions to

7    amend, and we've cited some of them.  And the A.V.E.L.A.

8    case from the Southern District which we cite in our reply

9    brief lists a lot of cases that talk about this.

10           The cases where they've been denied are cases

11   where they're raised by either -- issues were raised on

12   the eve of trial or raised after discovery and summary

13   judgment is already over or underway.

14           We are in a situation here, Your Honor, where as

15   of the time of the filing of the motion to amend, there

16   was still another month left of fact discovery.  At the

17   time the expert discovery was going to end in June.

18   That's now, as a result of a number of factors, been

19   pushed back at the request of all counsel.

20           So all discovery is not going to end until July,

21   and dispositive motions are not due for another five

22   months until -- four months -- until August, and the

23   briefing of that is not going to be completed until some

24   six months from now.

25           So I guess the point is:  Given the preference

1    under the rules to have issues adjudicated on the merits,

2    and this is not the time that the merits are addressed, we

3    would respectfully submit that notwithstanding the

4    defendants' arguments, there is good reason to allow us --

5    we should be permitted to add this additional claim.

6          It's a claim -- these claims are against the

7    same defendants.  We're not adding parties.  They involve

8    the same nucleus of operative facts.  And as I indicated,

9    as far as of the claims of continuing negligence on the

10   part of the defendants Adger and Dease, there isn't even

11   an indication in the briefing of what prejudice would

12   ensue.

13         The other thing I should have mentioned with

14   respect to discovery is, although fact discovery under the

15   scheduling order was cut off as of the end of February,

16   there were several depositions by agreement of the parties

17   because we had other depositions and things we had to

18   coordinate, that went into March.  We've had two

19   depositions in March.  And there remain two depositions,

20   again by agreement of the parties, because of the

21   accommodations of course under the present situation that

22   have been put back even further.

23         But there were two other depositions that were

24   supposed to happen by the end of this month that are now

25   clearly not going to happen, at least until the end of

1     May.

2                So, the point is, I don't think there is any

3     additional discovery that's needed at this stage.  It's

4     the same facts, the same parties.

5                To the extent there is some additional

6     discovery, we're still in the midst of discovery in any

7     event.  And given the preference for addressing issues on

8     the merits, we would ask that this amendment be granted,

9     and I don't think it's going to either delay the case or

10    to constitute the kind of undue prejudice that courts have

11    relied upon to deny the permission to amend.

12               THE COURT:  All right.  Coming back to your

13    argument on the issue of prejudice, I believe I heard

14    something about a two-part analysis or a two-step analysis

15    with regard to the prejudice?

16               Perhaps I misunderstood what you were saying.

17               MR. ROSENTHAL:  Yes; no, no, no.

18               THE COURT:  Could you please spell out your

19    argument with regard to the City's claim of prejudice?

20               MR. ROSENTHAL:  Yes.  I recognize that the

21    allegations of the proposed Thirteenth Count contain

22    claims, and the City addressed this in their briefs, that

23    involve a period of time.  It involved the City's

24    activities during a period of time that were not

25    specifically the subjects of our prior negligence claim or

1    our prior claims in general.

2         And so in that respect, there is a distinction

3    between the Thirteenth Count directed at the City alone

4    and the Eleventh Count directed at the individual

5    defendants.  And we add on to that, which is the

6    indemnification as a result thereof.

7         So as to that Thirteenth Count, there is an

8    issue of prejudice of whether or not it's undue prejudice

9    that at this stage of the proceedings, the Court should

10   decide not to allow that Count in.  I think it's a

11   different analysis.

12        I would just say on that subject, that while the

13   City has articulated the fact that they have to deal with

14   years subsequent in a way that is not true of Counts

15   Eleven and Twelve, this is information within their

16   possession.  It's not -- so -- and some of the cases have

17   pointed to that in doing the prejudice analysis.

18        That is that where a defendant is claiming

19   prejudice by virtue of an amendment, or any parties

20   claiming prejudice by virtue of an amendment, it's the

21   additional discovery that they claim they need to do, and

22   the City indicates there would be additional discovery

23   required involving information in their possession that

24   diminishes the weight on their side of the scale.

25        THE COURT:  Okay.  Well, you'll have an

1    opportunity after we hear from Mr. Gerarde to reply to

2    anything that he has to say on this issue.  But before I

3    call on him to respond to the arguments you've made, let

4    me see if I can get a clear picture from you with regard

5    to what discovery you think would be needed with regard to

6    Count Thirteen and what internal investigation you might

7    say would be needed in connection with this Count.

8              In the opposition memo submitted on behalf of

9    the City, the argument is made that an awful lot would

10   need to be done because you're talking about a period

11   spanning 18 years, involving many administrations, most

12   personnel have departed the scene.

13             I wonder if you're able to give me a clear

14   understanding of your position on those points.

15             MR. ROSENTHAL:  Yes, Your Honor.

16             The original complaint actually does cite a

17   conduct that occurred during the period of time at least

18   through 2006; but I must say that in the course of

19   discovery, the focus has been, understandably, on the

20   activities of the City and its procedures and lack of

21   proper procedures, as we claim it, during the period

22   leading up to the 1999 murder and 2000 prosecution.

23             So there would be, it seems to me from our

24   perspective, a need to notice a deposition or two,

25   possibly a 30(b)(6) deposition, relating to the cases and

1    the circumstances that apply during that period of time.

2            However, we already have taken the deposition of

3    former Assistant Chief Rachael Cain, and she testified

4    about procedures during this time, or lack thereof, in

5    connection with documenting and procedures applicable to

6    the search warrant here at least.

7            So my feeling is, while there may be the need

8    for one or two additional depositions, we're not talking

9    about much more than that.  And there was already notice,

10   I should say, in the original complaint about cases in the

11   period between 2000 and -- 2000, going into 2007, really.

12           Let me just add, as I think I'm indicating and

13   Your Honor is picking up, we see this in two separate

14   pieces.  And if there is a prejudice issue that is so --

15   that weighs on the balance on the side of the defendants

16   and the Court were to decide that that would preclude the

17   amendment to add Count Thirteen, I don't think that has

18   anything to do with counts -- the proposed Counts Ten and

19   Eleven.

20           And let me just say one other thing about

21   prejudice, Your Honor, and this really relates to the

22   individuals as much as the City, maybe more than the city.

23           One of the things that was argued in these

24   briefs was that a cause of action for negligence at this

25   point would be prejudicial because there is no claim that

1    could be raised on negligence.

2          The defendants don't even join that argument.

3    And the reason is, I think, the fact that a negligence

4    claim is to their advantage versus a civil rights claim

5    because the negligence claim clearly triggers

6    indemnification.

7          The City's position is, if it's not a negligence

8    claim, we're not going to indemnify.  At least that's the

9    smoke signals.  And from the individual defendants' point

10   of view, not only is the addition of Counts Ten and Eleven

11   not prejudicial because it doesn't involve any new set of

12   operative facts, anything that requires any additional

13   discovery and nobody's pointed to anything to the

14   contrary, but it's actually to their advantage to have a

15   negligence finding as opposed to a potential misconduct

16   claim.

17          THE COURT:  Okay.  Last question I have for you

18   at this moment is whether the statute of limitation

19   defenses that are being raised in connection with utility

20   arguments would apply to any of the other claims in the

21   existing complaint.

22          MR. ROSENTHAL:  They're going to be -- these

23   briefs that the defendants have submitted read very much

24   like summary judgment briefs that we've seen in other

25   cases; and so there are going to be statute of limitations

1    issues with respect to the state law claims, for sure.

2              And as the cases indicate, that is something

3    that needs to be developed on a -- it's a fact-related

4    basis.  At least you need a factual-related basis to do

5    it.  In fact, the defendants have attached documents,

6    they're the kind of documents that you should have in a

7    summary judgment motion.

8              This is not the time to litigate that, but it's

9    out there.  And so it's not like the amendments we're

10   proposing are raising legal issues that aren't going to be

11   addressed anyway.  They are.

12             There's another negligence count, among other

13   things, that is a more generic negligence count relating

14   to negligence in connection with the investigations back

15   at a point in time versus the continuing course of conduct

16   negligence that's alleged in Count Ten.

17             So it's going to be a statute of limitations

18   argument as to that.

19             My expectation, having worked with very capable

20   counsel who is going to be speaking in a moment,

21   Mr. Gerarde, is that he will raise, or his firm will raise

22   statute of limitations arguments with respect to the

23   out-of-state claims in other states; and so I expect that

24   to be an issue.

25             THE COURT:  Okay, thanks.

1            Let me hear now from Mr. Gerarde, please.

2            MR. GERARD:  Yes, thank you; good morning, Your

3    Honor.

4            So, as very apparent from the proposed amended

5    complaint, there are new claims, not just because of the

6    City which is a glaring new claim, but also against the

7    individuals.

8            But before the proposed amendment, we were

9    facing, in Count Seven a negligence claim for a negligent

10   investigation, negligent pursuit of exculpatory evidence,

11   negligent disclosure of exculpatory evidence; and

12   Count Nine against the City, assumption of liability for

13   those acts of those three individual detectives that were

14   sued in Count Seven; and then in Count Ten, a 52-557m

15   claim again limited to the negligence of Detective Dease,

16   Adger and Breland for that claimed negligent

17   investigation, negligent pursuit of exculpatory evidence

18   and negligent disclosure of exculpatory evidence.

19           Now we see in the proposed amendment, in

20   Count Eleven, that is a claim of continuing negligence for

21   the following 15 or 17 or 18 years beyond arrest and

22   conviction, and the City is now being asked to indemnify;

23   it's really assume liability for that in Count Twelve.

24           But Count Thirteen the direct action bears no

25   resemblance to the former direct action, which is

1    Count Ten, because now it's failure to implement policies

2    and not just during the investigation and arrest and

3    conviction phase, but also in all subsequent years.  And I

4    think Your Honor picked up on how palpable the prejudice

5    would be to the City if we now have to defend a claim like

6    that.

7         Your Honor, that discovery in this case -- I

8    mean, certainly in this case -- I don't know how we could

9    defend that.  And one of the suggestions is that maybe in

10   a different case if you can get past the statute of

11   limitations and prove continuing course of conduct, which

12   I disagree -- in a different case maybe something like

13   that could be raised.

14        But in our case, discovery closed February 29,

15   and we did have just these -- we had four depositions

16   noticed in February that we couldn't get done in February

17   for a lot of different scheduling reasons that we said,

18   okay, those four and those four only, that's it.

19        And so they all got dibs.  And now with the

20   public health emergency, it's postponed two of those even

21   farther, but we'll get those done.

22        But we're now on to having our experts review

23   the twenty plus depositions that have been taken, they're

24   writing, they're writing 26(a)(2) reports for when we have

25   a very aggressive deposition schedule.

1             With respect to those expert depositions, which

2     it's just a matter of weeks between taking the depositions

3     of the plaintiff's experts and the actual disclosure of

4     the defense experts.

5             And if we were to face a brand new theory

6     regarding failure to promulgate rules and regulations,

7     basically negligent management of a police department

8     regarding witness interviews, exculpatory evidence, both

9     during the investigation and post -- I mean, if this

10    amendment was done under normal circumstances, we would

11    expect 26(a)(1) initial disclosures.  We'd have written

12    discovery on them.  We would depose both of the plaintiffs

13    since December and we would ask each of those person at

14    the deposition what duty was owed in this particular year?

15    Who owed that duty?  When and how was that duty breached?

16    And to whom was it apparent that if he or she didn't take

17    immediate action, that some imminent harm would befall

18    Marquis Jackson, and if Vernon Horn joined, then Vernon

19    Horn as well.

20            That's the only way we could possibly be in a

21    position to defend this claim.  We can't do that now, not

22    in this case.

23            Your Honor picked up on what we mention in our

24    brief.  There's 400-plus officers in the City of New Haven

25    Police Department at any given time in every one of those

1    years, both before conviction and post conviction, right

2    up until today, hundreds of those have been supervisory

3    positions; and they say it's the same defendants, the same

4    operative facts, but we're being sued as generically "The

5    City."  And you need all kinds of discovery to determine

6    who in the City are you referring to, because that's how

7    we would develop an immunity defense and get an idea of

8    what the plaintiffs are talking about.

9            So there's no question that there is

10   extraordinary prejudice if, in this particular case and

11   the posture we're in, we now have that added as something

12   to defend.

13           And I would add that the statute of limitations

14   in this case, many times it's not something that you could

15   say would render a case futile at this stage, but right

16   now where we are, statute of limitations as to negligence

17   would render -- is a compelling defense and the negligence

18   addition would be futile.

19           The case law is all in the brief, I'm not going

20   to repeat it, but we know there is a statute of repose

21   which is an absolute bar to a negligence claim three years

22   after the act of negligence.

23           So the act of negligence is -- we can all do the

24   math on the calendar -- the only way something would

25   possibly survive that.

1           And the Court says even if that means you would

2    have no way of knowing to bring your negligence claim

3    within that three-year period because of other facts, it's

4    a hard rule, but it is a rule.

5           So the only way something could possibly be --

6    could survive that three-year statute of repose, is if

7    there was some type of continuing course of conduct and it

8    actually took place within three years of the lawsuit

9    being filed.  Again, that would be a different lawsuit.

10          There's no way we could add that to our lawsuit

11   and have it make sense without extraordinary prejudice;

12   and I don't think any of the grounds for continuing course

13   of conduct to apply.  We've given the Court those cases.

14   There's no special relationship between the parties.

15   There's no subsequent acts.  And they are three detectives

16   that would have been long retired by the 2015, if we

17   backed up three years.

18          I want to say a couple of words about the Heck

19   v. Humphrey case, because it's being raised as a reason

20   why the plaintiffs could wait until the conviction was

21   overturned or set aside -- this is a more accurate

22   characterization -- and that the Heck rule would allow

23   them to bring a negligence claim within essentially the

24   new statute of limitations running at the time the

25   conviction was set aside.

1          Heck is a doctrine that is unique to 1983 cases;

2     and, as we all know, it's a rule that establishes that you

3     can't bring a 1983 claim if the proof of that 1983 claim

4     would negate an essential element of the crime you've been

5     convicted for.

6          So you have to have that conviction set aside or

7     somehow go away before you'll be allowed to bring a 1983

8     claim.  It does not apply to state law.  You can sue for

9     negligence anytime, and it will not negate an essential

10    element of this conviction.

11         It's not a federal law that would preempt a

12    state statute like a statute of repose and a negligence

13    claim for sure, and the Heck rule is not a blanket

14    statement that every cause of action, state or federal,

15    accrues anew upon the setting aside of a conviction.

16         I just point, Your Honor, to Footnotes 6 and 7

17    of the Heck decision.  I think that's the key to

18    understanding the reach of Heck, because it gets thrown

19    around in state cases from time to time.  Those footnotes

20    explain that if something would necessarily invalidate the

21    conviction, then the Heck rule applies.  But if it's

22    something that would simply relate to the conviction but

23    not necessarily overturn it, then the Heck rule would not

24    apply.

25         And the example they give is a person could sue

1    under 1983 for an illegal search right away.  You wouldn't

2    have to wait for an invalidation of the conviction because

3    even in the case where that search that was claimed to be

4    illegal resulted in evidence that was introduced at that

5    trial and resulted in the conviction of that party,

6    because there are other reasons why that evidence might

7    come in even if the search was illegal, then it therefore

8    doesn't necessarily mean that the conviction -- that an

9    essential element would have to be overturned, and

10   therefore the Heck rule wouldn't apply.

11          So Footnotes 6 and 7 will explain -- I mean,

12   certainly in Count Thirteen, they're talking about the

13   failure to promulgate -- the negligent failure to

14   promulgate rules and regulations for -- within the City of

15   New Haven regarding investigations and interviews of

16   witnesses, you can have that negligence and at the same

17   time it would not invalidate any essential element of the

18   conviction of felony murder that these men were convicted

19   of.

20          I want to just add a final point.

21          There were rules set up by Judge Meyer as to how

22   this would proceed.  The plaintiff was offered an

23   opportunity to put a time parameter in -- Plaintiff

24   Jackson I'm talking about -- for an amended complaint, and

25   attorney Rosenthal responded:  We will not need any time

1    to amend the complaint.  We will file our complaint by --

2    any amendment by April 30th of 2019; and the Court so

3    ordered.

4             We were then -- in discovery, we did have to

5    address our schedule with Judge Meyer in December of 2019.

6    We needed to push it out a couple of months, and we did do

7    that with fact discovery and experts and summary judgment,

8    and again there was no mention for the need to amend the

9    complaint.

10            The rules and regulations of the City of New

11   Haven were disclosed many, many months before depositions

12   even started.  So plaintiffs had the rules and

13   regulations.  If there was any claim that we were

14   negligent for failure to promulgate the right rules, then

15   there was ample time to bring that in in this case.

16            I would add that Brady obligations don't survive

17   post conviction.  And so, I mean, in terms of even the

18   individual defense will speak for themselves, but in terms

19   of there being some kind of continuing duty that the City

20   would have to assume liability for going to the

21   individuals that go beyond conviction, I would need to

22   have a lot of discovery on nothing.  I would be the one

23   who would be asked to indemnify to assume that

24   responsibility, and I would have all kinds of discovery as

25   to who owes that duty?  What duty do you claim survives

1    your conviction?  How was that breached?  And to whom was

2    it apparent that, like I said, the fact that if some

3    action wasn't taken you'd be harmed imminently?

4         This would not be one or two more depositions.

5    This would open up an entire world of discovery.

6         You have Vernon Horn's lawyer listening in, even

7    though he's not party to this motion, because he would

8    like to file the same thing, I'm sure, if Your Honor

9    allows it.  I'll actually let him speak for himself.  But

10   it would bear on these cases.  They will be tried

11   separately, but they're consolidated for discovery.

12        And there's no question that discovery would --

13   to mention that there would be a 30(b)(6) deposition, that

14   would be a seven-hour plus deposition.  That be all of the

15   rules for all of the years.  And then this isn't something

16   where it's simply within the City's control because, like

17   Your Honor noted, there's so many supervisors, so many

18   administrations, it's so difficult to track them down just

19   to try and coordinate things in our own case.

20        But Attorney Rosenthal and I are in a different

21   case, the one that has 20, 30 depositions already done,

22   and we're in the summary judgment stage for a 2006 event.

23        So I would note, those are all cases -- the

24   activities that postdated our conviction that are cited in

25   our complaint are based on a Monell claim for pervasive

1    practice to violate constitutional rights.  They are not

2    negligence claims that are kind of already in place.

3            So, again, this does not belong in our case

4    without causing extraordinary prejudice.  If Attorney

5    Rosenthal tried to file this in State Court, the same

6    exact claim, maybe it will survive there.  If there's

7    continuing course of conduct, they could try to file again

8    saying within the last three years, you know, I have a

9    claim I'm making based on a claim of negligence of yours,

10   and we would obviously oppose that; but that's the proper

11   place for that.  Not in this case in this posture.

12           Otherwise I'll rely on the brief.  Thank you.

13           THE COURT:  Okay.  You mentioned a case where

14   you and Mr. Rosenthal are embarked on 20 or 30

15   depositions.  Where is that case pending?

16           MR. GERARD:  That is pending in U.S. District

17   Court in Hartford.  It's Judge Covello, Your Honor.

18           That's Bobby Johnson v. City of New Haven.

19           THE COURT:  What's the discovery deadline in

20   that case, do you know offhand?

21           MR. GERARD:  Yes, I do.

22           That case is ahead of our case by about a year.

23   So that case discovery closed, summary judgment was filed.

24   We were before Judge Meyer.  Before Judge Meyer recused

25   himself.  And we actually had stood up and had oral

1    argument for three or four hours on a summary judgment

2    motion before -- and then the case was transferred to

3    Judge Covello and then Judge Covello now has the motion

4    under consideration.  And that's our posture.

5              That's Bobby Johnson v. City of New Haven, et

6    al.

7              THE COURT:  You mentioned that these cases, the

8    Jackson and Horn cases, are going to be tried separately.

9    Which one is supposed to go first?  Has that been

10   determined?

11             MR. GERARD:  No, that has not been determined at

12   all.  We've been consolidated for discovery and will be

13   filing motions for summary judgment after we do expert

14   discovery, and that will take us to about August or

15   September, I believe.

16             THE COURT:  All right, thank you.

17             Before I hear from counsel for the individual

18   defendants, I think it would be most helpful to me if I

19   heard now from Mr. Rosenthal in reply to Mr. Gerarde's

20   comments on behalf of the City.

21             MR. ROSENTHAL:  Certainly, Your Honor.  Two

22   things.

23             I'm going to talk about the utility arguments

24   that Attorney Gerarde advanced, because -- both because I

25   think there's something I need to address and because he

1    raises an interesting issue as to the second half of the

2    statute of limitations argument in our brief.

3              So as I said at the outset, and I think Attorney

4    Gerarde's analysis of the applicable principles, only goes

5    to reinforce this is not the place or time to conduct a

6    summary judgment analysis of statute of limitations legal

7    issues, because they're factually driven and they also

8    have complexity components.

9              But there's at least a colorable, and I think

10   far more than colorable, continuing course of conduct

11   claim here that warrants hearing our summary judgment.

12             Attorney Gerarde has cited the cases that show

13   why the continuing course of conduct doesn't apply in this

14   case.  I may be missing something, but there is not a word

15   or a case mentioned anywhere in their brief or the

16   individual defendant's briefs that addresses the

17   continuing course of conduct doctrine in Connecticut, and

18   there's no question that the proposed amendment squarely

19   raises that issue.  We've cited the case law in our brief

20   concerning that.

21             And I think the reality is that under -- that

22   the present posture is that all three of the proposed

23   counts -- the two against -- the two for the individual

24   defendants and the Thirteenth Count against the City, are

25   rooted and are squarely within the continuing course of

1    conduct doctrine in Connecticut, it's plausibly pled, and

2    at this stage there's no futility bar to those claims

3    advancing.

4           The second argument that we raised -- and I

5    really didn't discuss this in my opening remarks, but it's

6    in the brief -- there's a second basis for a negligence

7    claim, and I think that that's another area, as I was

8    listening to Attorney Gerarde, in which Counts Ten and

9    Eleven -- I'm sorry -- Eleven and Twelve are distinct from

10   Count Thirteen.  Heck.

11          The case we cite is a Connecticut Appellate

12   Court case, Taylor v. Wallace.  It's on page 8 of our -- 7

13   and 8 of our reply brief -- specifically cites Heck in a

14   state toward context.

15          So while there is previous law that was cited in

16   the defendants' opening opposition briefs, we feel that

17   there is a distinction.  Heck does not automatically

18   apply.  It's a federal issue.  And the cases going out of

19   Heck talk about that.

20          Connecticut has now adopted Heck for purposes of

21   negligence actions premised on an underlying criminal

22   conviction.  And we cite specifically from Judge -- now

23   Appellate Judge Bright's opinion in Tierinni, which Taylor

24   v. Wallace, at the Appellate Court level, cited which

25   specifically says that an exception to the statute of

1    limitations would not present an issue, in a

2    conviction-based negligence claim would not present an

3    issue because the necessary precursor to that action is

4    that the conviction need be set aside.  This goes to

5    something called the Exoneration Rule.  It applies to any

6    negligence claims we would submit.

7         And I think Attorney Gerarde is correct, that

8    while Counts Eleven and Twelve fall squarely within that

9    Taylor v. Wallace state-based rule, Count Thirteen does

10   not.

11        So our claim as to Count Thirteen does not have

12   a futility problem under the Continuing Course of Conduct

13   Doctrine.  I do not claim, and I should correct that if it

14   was not clear, I do not claim that Count Thirteen would

15   also be protected from Statute of Limitations on a

16   Heck-based, Taylor-based analysis.

17        But this is precisely the reason why summary

18   judgment is the place to address this, not here.  And it's

19   not frivolous.  There's continuing course of conduct that

20   goes back in Connecticut for decades.  They don't even

21   address it, let alone show why on its face it's not

22   applicable.

23        THE COURT:  Okay.  Mr. Gerarde painted a pretty

24   grim picture of what the City would face by way of

25   additional discovery and discovery-related burdens if the

1     amendment were allowed against the City.  You indicated

2     that from your standpoint, you would need only perhaps a

3     couple of depositions.

4               Who would you seek to depose?  Do you know at

5     this time?

6               MR. ROSENTHAL:  Yes.  I think the only 30(b)(6)

7     deposition that we would simply, ask tracking the

8     allegations of the Thirteenth Count for them to produce

9     somebody who could testify concerning what procedures, if

10    any, the City had in place from the period 1999 through

11    2018 with respect to three things -- three relating

12    things:

13              One is procedures for the identification and

14    reporting of exculpatory evidence;

15              Two is procedures for the reporting and -- for

16    the preservation and disclosure of returns on search

17    warrants; and

18              Three would be the -- well, related to that

19    would be the assurance that that would happen, those two

20    things.

21              And I think the answer would be that they didn't

22    have any other than what was already in place.  And what

23    was already in place.  And what was already in place has

24    been explored with Detective Cain.  Detective Cain

25    testified about this.  So it would be an add on to what

1    she had to say.

2          Beyond that, I'm hearing that -- well, there are

3    other cases, as indicated in the complaint, and Attorney

4    Gerarde talked about a 26(a)(1) disclosure.  Look, I am --

5    I don't think from our perspective that we're talking

6    about more than a 30(b)(6) deposition.  From his

7    perspective, if he wanted to explore those other cases

8    that we cite in the complaint, there may be another

9    deposition or two involved.

10          As I hope I've made clear I am cognizant of the

11   fact that there's complications involved with Count

12   Thirteen that don't apply at all to Counts Eleven and

13   Twelve.

14          THE COURT:  Last thing for the moment:  Has this

15   kind of discovery been done in any of these other cases?

16   That is, discovery relevant to the negligence claim

17   against the City?

18          MR. ROSENTHAL:  Yes.  In the Bobby Johnson case,

19   there was discovery conducted with respect to cases in the

20   time period two thousand and -- I think it's 2005 through

21   2008.  And in our case here, we did do discovery with

22   respect to other cases during the time period 1991, '92,

23   through 1999.

24          So we already have some pattern and practice

25   cases in this present case, but the time period following

1    the 1999/2000 period hasn't really been pled and there

2    hasn't been discovery done with respect to it.  We've had

3    a couple of depositions already and disclosures.

4              THE COURT:  To be clear, did you just say that

5    in the Bobby Johnson case pending in front of Judge

6    Covello, discovery on issues relevant to this negligence

7    claim was done for a period encompassing -- was it 2005?

8              MR. ROSENTHAL:  The Bobby Johnson case is a 2006

9    case.

10             Really, that discovery, I would say, was mostly

11   focused on that particular case.  So the answer is no.  I

12   don't think there's anything that talks about the City's

13   practices and policies in general in that time period.

14             So that case in itself does.

15             THE COURT:  All right, thank you.

16             Then at this point, let me hear from counsel for

17   the individual defendants, please.

18             MR. KATON:  Thank you, Your Honor, Thomas Katon

19   for the record.

20             The individual defendants have been retired for

21   many, many years.  And as part of this grim picture of

22   discovery that the City is going to confront, the

23   individual defendants are going to confront the exact same

24   grim picture.

25             They're going to have to go and establish what

1   the standard of care supposedly was, how it evolved over

2   the years, how it would have pertained to them after they

3   weren't even employed by the police department.

4           So all of the discovery that's going to need to

5   be done is going to have to be done by the individual

6   defendants in order to track this over the course of 18

7   years.

8           Second of all, there may have been discovery in

9   the Bobby Johnson case, but the individual defendants here

10  were not privy to that discovery; they did not have the

11  chance to cross-examine in any of those depositions; and

12  at minimum, whatever those might establish, they're going

13  to have to be reopened by the individual defendants.  So

14  there's going to be a substantial need for discovery by

15  the individual defendants, you know, in order to defend

16  these new claims regarding the continuing course of

17  conduct.

18          I also want to address the notion that Taylor v.

19  Wallace, cited in the plaintiff's brief, applies to this

20  case.

21          It should be noted that Taylor is a standing

22  case and the analysis or analogy to Heck apply to the

23  context of standing and whether or not a complete cause of

24  action had accrued.  And I would submit that the notion of

25  accrual is already baked into the statute of limitations

1    mix in this case.  Because both statutes, the 52-584, if

2    it were to apply has a three-year statute of repose, and

3    52-577 also is a strict three-year statute.  And both

4    statutes indicate that it's a harsh rule but your cause of

5    action could be time barred before it even accrued.  And

6    that's just well-known jurisdiction under -- jurisprudence

7    under both of those statute of limitations.

8            So in addition to having to track now 18 years

9    of a developing standard of care, we're in the process of,

10   you know, getting expert reports generated.  All of this

11   is going to have to then be put in front of an expert for

12   potential analysis in their view.  So the same grim

13   discovery picture confronts the individual defendants, and

14   that is certainly prejudicial.

15           I also want to address the notion, if I could,

16   about continuing course of conduct.

17           You need two things in order to establish

18   continuing course of conduct under Connecticut law, and

19   that is a special relationship or a later wrongful conduct

20   of a defendant related to the prior act.

21           So the notion that somehow every day that this

22   proceeded over the course of 18 years is a new act, it

23   doesn't relate to the prior act.  The prior act is a

24   discrete act which became fixed upon the allegedly

25   wrongful conviction; and that's when the clock would have

1    started ticking.

2          Everything that the plaintiff argues here is

3    that it was a harm and the damages just kept increasing

4    over the course of these 18 years, not that there was a

5    continuing tort that proceeded over that course of time.

6          So that's really all I have, Your Honor.

7          THE COURT:  Okay, thank you.

8          MR. ROSENTHAL:  Could I respond to that, Your

9    Honor?

10         THE COURT:  Yes.

11         MR. ROSENTHAL:  Two things.

12         One is with respect to the last comments that

13   Attorney Katon made on continuing course of conduct, I

14   would respectfully submit that he's wrong.  Again, this is

15   the reason why we need full briefing on summary judgment.

16         But we address the case law on this, Witt v. St.

17   Vincent's and a number of other cases, most recently Essex

18   Insurance.  They talk about when the continuing course of

19   conduct doctrine applies in the continuing failure to

20   disclose context, the precise context we talked about.

21         One of the cases we cite, the Bednarz case,

22   Connecticut Supreme Court case, involved a physician who

23   was retired during that period of time.

24         The second thing, Your Honor, is -- so

25   continuing course of conduct, which wasn't addressed at

1    all in the individual defendant's brief either, is in and

2    of itself an answer to the futility argument and one

3    that's very factually based and can be addressed on

4    summary judgment.

5          I think there's going to be little question

6    based on the factual record that the very simple facts

7    here, which are that these detectives had possession of

8    phone records and to analyze phone records, to show they

9    had the records and actual knowledge of the information

10   that we said should have been disclosed, kept it in their

11   own possession, didn't disclose it in the proper way and

12   did it for a continuing period of time.

13         It's not factually complicated.  It's they had

14   something, they didn't disclose it the way they should

15   have originally, and that original wrong was continued and

16   compounded year after year while Mr. Jackson sat in jail.

17         We cite a lot of Connecticut case law that

18   supports that doctrine.  It's limited in time to this --

19   any way, I'll rest on the briefs on that, but I think it's

20   clear in the Bednarz case, which we have a retired

21   defendant, and there's a discussion on page 4.

22         The second thing, Your Honor, and this goes back

23   to something Mr. Gerarde said, is this idea that the

24   determination of whether there is a duty, continuing duty,

25   is something that requires a lot of discovery, it is a

1       little bit puzzling to me.  That's a legal determination.

2       It's not for an expert.  If there's an expert that's going

3       to comment on what the obligations of a police officer

4       are, that expert is going to be part of the case anyway.

5             But Attorney Gerarde, I think, said you have to

6       take discovery off of Marquis Jackson to find out what

7       duty he's talking about.  Marquis Jackson can't talk about

8       what duty there is.  That's a legal question for the Court

9       based on the factual record, and the factual record has

10      already been developed.  That is, that these detectives

11      had possession of these clearly to us exculpatory

12      information that they failed to disclose to anyone.

13            And we included in Exhibit D to our original

14      motion, the deposition excerpts from Defendant Adger, the

15      only one of the two defendants available, in which she was

16      asked at her deposition about her possession and her

17      analysis of these records underlying the things in the

18      record exculpatory that she then doesn't disclose.

19            She was also asked about them, and she says she

20      doesn't see it as exculpatory or that it has any relevance

21      to the case.  And that's what triggered in our mind that

22      this is not just intentional suppression, there's a

23      factual basis for a jury to conclude that, you know what?

24      The tunnel vision was so overwhelming in this case that

25      she really didn't believe it had anything to do with this

1    case.  Because within a day of the case, she and Detective

2    Adger decided they had documents to show this, that they

3    had solved the case that Jackson and Horn committed this

4    murder.  They did it within 24 hours.  And then when other

5    evidence surfaces about the Bridgeport connection, they

6    ignore it, they bury it.  And they don't disclose because

7    they don't believe it's connected to the people they

8    believe, maybe they genuinely believe, did it.

9            So there's no discovery that has to be

10   conducted.  It's something that has to be litigated on

11   summary judgment.  It's going to be litigated anyway on

12   summary judgment and the statute of limitation issues.

13   And there will be compelling arguments, I'm sure, on both

14   sides when that date is arrived at.

15           But the record, the underlying factual record

16   that the Court will need and the parties will need to

17   address that issue, it's already in the record.

18           MR. GERARD:  Your Honor, may I address some of

19   the points that --

20           THE COURT:  Actually, Mr. Gerarde, I'm running

21   out of time and I really don't want to --

22           MR. GERARD:  I have --

23           THE COURT:  -- belabor these points.  I've read

24   the papers and I've listened very carefully to what you've

25   had to say.

1          If there's something that is new and different

2     that you think you really do need to add in the interest

3     of your client, then yes, but please don't go over any of

4     the same old ground.

5          MR. GERARD:  Okay, I'll do it very quickly, Your

6     Honor.

7          With regard to the Heck doctrine being applied

8     to state cases, those are in legal malpractice cases where

9     there was a habeas pending that would determine the

10    ineffective assistance or not of the attorney, and the

11    Court said we have to wait for that before you can file

12    your negligence claim against the attorney.

13         Regarding the issue of what discovery would be

14    needed, they say we just need someone to tell us the

15    policies from between 1999 to 2018.  That's never one

16    person.

17         Just for example, we had one chief of police we

18    found for the Bobby Johnson case, he's retired in Florida.

19    The chief involved in our case, the one we're talking

20    about now, is retired in South Carolina.  I wouldn't have

21    any ability, given our shelter in place mandate during

22    this public health emergency, to go and find all these

23    retired people, see who the right people are for all of

24    these years, and then comply with what they're asking for,

25    which would not just be a simple 30(b)(6) deposition, it

1   would be a monster.

2          In terms of the equities, Your Honor, we are

3   hampered in our ability to defend, and this is something

4   that they absolutely could have pled any time after we

5   gave them our rules and regulations in May of 2019.

6          And the factual record hasn't been developed.

7   The factual record regarding anything post conviction has

8   not been developed at all and would have to be developed

9   so then we would be able to find out, was there a duty?

10  Was it breached?  And to whom it was apparent that if he

11  or she didn't act that Marquis Jackson would be harmed?

12         And that's my ability to defend the case on

13  immunity, and I would be happy to supplement with any

14  information Your Honor needs regarding the

15  non-applicability of the continuing course of conduct.

16         That's all I have.  Thank you, Your Honor.

17         THE COURT:  Okay, thank you.

18         Mr. Rosenthal, I trust you've said all you need

19  to say.  You do have the last word here.

20         Again, I don't want to keep cycling through, but

21  is there anything you need to say in response to what

22  Mr. Gerarde just said?

23         MR. ROSENTHAL:  No, Your Honor, I think I've

24  addressed the issues, and in my brief I've addressed the

25  issues.

1          THE COURT:  Okay.  Let me tell you what I think.

2          First, with regard to the opposition argument

3     that the proposed amendments would be futile.  I don't

4     think that I should be giving the defendants an

5     opportunity in connection with this motion to amend to

6     litigate defenses that would apply to existing counts,

7     particularly since the arguments bearing on these defenses

8     are somewhat complicated and fact bound.

9          I therefore agree with Mr. Rosenthal' position

10    that this is not the right vehicle for that to be done.

11    Instead, applying the usual standards, I look at the face

12    of the proposed amendments and ask whether they are

13    plainly frivolous or untenable and almost certainly

14    subject to dismissal.

15         Based on what I know at this moment, I can't

16    make that finding, so the futility argument is unavailing

17    in my opinion.  That leads to the argument based on

18    prejudice.

19         The defendants have the burden of persuading me

20    that permitting these proposed amendments would be unduly

21    prejudicial, and we've spent a fair amount of time on that

22    topic.

23         I'm not persuaded that the proposed amendments

24    would be unduly prejudicial, and let me briefly explain

25    why.

1          First off, we're considering the issue of undue

2     prejudice in the context of a motion to amend where the

3     allegation of prejudice, or the assertion of prejudice, is

4     anchored in the delay that has occurred prior to the

5     filing of the motion.

6          So to the extent the City feels aggrieved by the

7     prospect of having to retrace what its policies were over

8     this long period of time, nearly two decades, that's

9     something that the City would have to contend with if this

10    claim against the City had been included earlier,

11    certainly if it had been included in the initial complaint

12    and if it had been included perhaps three months into the

13    life of a case.  I think you follow me.

14          What I need to consider is whether the plaintiff

15    should be allowed to put that burden on the City at this

16    point in time, a burden the plaintiff would have had a

17    right to impose on the City, presumably, when the case was

18    filed and within some period of months thereafter.  Or

19    should the plaintiff be precluded because it's too late?

20    Because now the prejudice to the defendant City and the

21    individuals is such that allowing the plaintiff to proceed

22    would be unduly prejudicial.

23          In that regard, I understand that the period for

24    fact discovery recently closed and expert discovery is

25    proceeding in an intensive way, and that permitting the

1     proposed amendments would require additional discovery

2     that would also require postponing the expert discovery.

3     That for me is the key.

4              In that regard, I'm not persuaded that the

5     additional discovery would be so onerous that a lengthy

6     continuance of the discovery deadline would be necessary.

7     It seems to me Mr. Rosenthal is essentially correct in

8     saying that this claim involves a duty of care that is

9     primarily derived from case law, and perhaps statutes, as

10    opposed to facts relating to who did what or thought what

11    or said what or didn't do what on a certain day.  It has

12    to do with what the law required of the City and its

13    personnel over this course of time.

14             I may be mistaken, but from what I know at this

15    moment, I believe that Mr. Rosenthal is probably right in

16    saying that the duty would be found in those sources, in

17    those legal sources, rather than in fact discovery of what

18    happened on the ground, so to speak.

19             That doesn't mean that it's a trivial matter.

20    It may be that having to review the law on that issue by

21    an expert would take some time, take some thought.  It may

22    be that if the City has not yet looked through its files

23    to be sure it's produced its policies relevant to this

24    claim, that may require some additional time.  But I don't

25    see it as a hugely burdensome matter.

1             I also think that Mr. Rosenthal is probably

2   right when he says that discovery relating to the breach

3   of this duty is unlikely to be complicated.  There's no

4   need for the defendants to take discovery of Mr. Jackson,

5   I don't think, to find out from him what the legal theory

6   of the case might be.  That is available from

7   Mr. Rosenthal; and in the circumstances, I would expect

8   Mr. Rosenthal to cooperate very actively in clarifying any

9   matters that need clarification with regard to the legal

10  theory, and I expect that counsel would be able to get

11  that squared away in short order.

12            The fact discovery that would be necessary with

13  regard to the breach of this alleged duty, I can't, as I

14  stand here, make any findings with regard to what

15  discovery would be necessary, but I have difficulty

16  imagining that it would be factually complicated.

17            So I think that in the circumstances while, yes,

18  granting the proposed amendments is going to result in

19  some delay and some additional discovery, the extent of

20  the delay and the extent of the additional discovery is

21  not such as to persuade me that these proposed amendments

22  should not be allowed.

23            With regard to the timeliness of the motion and

24  diligence, I think that the plaintiff has sustained his

25  burden of showing that his counsel has acted with

1    reasonable diligence in the circumstances.  I don't think

2    that plaintiff's counsel are guilty of sitting on their

3    hands, biding their time, failing to attend to the matter

4    as I think would be necessary to justify denying a motion

5    on that basis.

6            Truth is, still the case is rooted in the

7    1990's, the litigation itself is what, about a year old,

8    and you, experienced counsel, well know that that is not

9    what you might call a case that has been pending for a

10   long time in our district.  It would be different if the

11   case had been kicking around for two years or more, but

12   that's not so.

13           Finally, the scheduling of this case is geared

14   toward the filing of dispositive motions, which if denied

15   would lead to a jury trial and it's the jury trial that

16   looms out there on the horizon as our destination

17   presumably; and I don't know, but I doubt we're going to

18   be having jury trials for awhile.  We're able to do just

19   about everything but jury trials during this lockdown, but

20   jury trials are simply not something we can do.  As a

21   result, the trial list is growing and criminal cases will

22   take priority and then civil cases that are trial ready

23   before this one.

24           So I'm in no position to know today when we

25   would be able to pick a jury in this case, assuming the

1    case were to survive dispositive motions.

2          It would be different if the discovery deadline

3    had passed and expert discovery was done and we were in a

4    position to pick the jury in the near future.  In that

5    case, the delay to these individual defendants might

6    require me to strike a different balance, but in the

7    present circumstances where jury trials have been

8    suspended indefinitely and this case is about a year old

9    and expert discovery is ongoing and proposed amendments

10   are not going to entail as far as I can tell a lot of

11   burdensome discovery, I think all things considered, the

12   motion should be granted.

13         So there you have it, that's my view; and unless

14   there is something else that anybody wants to raise at

15   this time while we're together on the phone, I think we

16   can adjourn.

17         MR. GERARD:  Your Honor, Your Honor has just

18   issued an order that contemplates the existing schedule

19   will have to be enlarged, because I think all counsel

20   agree it will.  We haven't had a lot of luck agreeing how

21   much time is necessary for certain things.

22         Could we accept from Your Honor that the

23   existing deadlines are now not going to need to be met

24   because we'll submit a new schedule for fact witness

25   discovery and then experts and then summary judgment?

1          THE COURT:  Yes.

2          I'm sorry to hear that you had trouble reaching

3     agreement, but I hope you'll have better luck going

4     forward because you know better than I what you need to do

5     and what your schedules look like, et cetera.

6          But, yes, you should confer and submit a

7     proposal for me to consider with regard to the tailored

8     scheduling order, and I'll do my best to accommodate you.

9          If you're unable to reach agreement and there's

10    a material disagreement, then let me know and we'll get

11    back on the phone and we can talk about it.

12         MR. GERARD:  Very well.

13         MR. ROSENTHAL:  Thank you, Your Honor.

14         THE COURT:  Okay, thank you all.  We're

15    adjourned.

16              (Proceedings adjourned at 11:05 a.m.)

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3              In Re: JACKSON vs. NEW HAVEN, ET AL

4

5

6              I, Darlene A. Warner, RDR-CRR, Official Court

7    Reporter for the United States District Court for the

8    District of Connecticut, do hereby certify that the

9    foregoing pages are a true and accurate transcription of

10   my shorthand notes taken in the aforementioned matter to

11   the best of my skill and ability.

12

13

14

15

                        /s/_____
16
                          DARLENE A. WARNER, RDR-CRR
17                          Official Court Reporter
                          450 Main Street, Room #223
18                        Hartford, Connecticut 06103
                          darlene_warner@ctd.uscourts.gov
19

20

21

22

23

24

25